UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE RODRIGUES, pro se,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., U.S. BANK N.A., HSBC BANK USA NATIONAL ASSOCIATION AS TRUSTEE, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), WMC MORTGAGE CORP., GENERAL ELECTRIC COMPANY and DOES 1-100,<br><br>　　　　　　　　Defendants. | Civ. No. 16-cv-3845 (KM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

　　Jose Rodriguez brings this action in connection with a mortgage on his property in Kearny, New Jersey. Now before the court are motions under Federal Rule of Civil Procedure 12(b)(1) to dismiss the complaint for lack of jurisdiction, and under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief may be granted. Those three motions are brought by defendants General Electric Company ("GE") and WMC Mortgage Corp. ("WMC") (ECF no. 5); HSBC Bank USA National Association as Trustee ("HSBC"), U.S. Bank N.A. ("U.S. Bank"), and Wells Fargo Bank, N.A. ("Wells Fargo") (ECF no. 21); and Mortgage Electronic Registration Systems, Inc. ("MERS") (ECF no. 24). For the reasons stated herein, the motions to dismiss will be granted.

## I. Background

### A. The State Action

On October 22, 2013, Mr. Rodrigues filed a civil complaint, later amended, in Superior Court, Chancery Division, Hudson County. The three named defendants were Wells Fargo Bank, N.A. (Wells Fargo), U.S. Bank National Association as Trustee for WFMBS 2007-007 (U.S. Bank), and HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-7 ("HSBC"). *Rodrigues v. Wells Fargo Bank, N.A., et al.,* Docket No. C 000144-13 (the "State Action").

On December 8, 2014, the defendants in the State Action filed a motion for summary judgment. (ECF no. 21-4) On January 9, 2015, Hector R. Velazquez, P.J. Ch., entered an order granting the defendants' motion for summary judgment and dismissing the amended complaint with prejudice. (ECF no. 21-5)[1]

Rodrigues appealed. (ECF no. 21-6) The New Jersey Superior Court, Appellate Division, affirmed. *Rodrigues v. Wells Fargo Bank, N.A.*, No. A-2373-14T4, 2016 WL 2759358 (N.J. Super. Ct. App. Div. May 13, 2016) (copy at ECF no. 21-3). I quote at length the Appellate Division's opinion, which summarizes the facts established on summary judgment, the claims asserted by the plaintiff, and the basis for the judgment it was upholding:

> We recite the facts found in the summary judgment record, viewed in a light most favorable to plaintiff....
>
> In October 2005, plaintiff gave a purchase money mortgage of $415,800 to WMC Mortgage Corporation to purchase 289 Highland Avenue in Kearny. On March 28, 2007, plaintiff entered into a loan (Loan or Note) in the amount of $438,400 with Wells Fargo, refinancing the WMC mortgage. The Loan was secured by a

---

[1] The order cites an oral statement of reasons for the ruling. The transcript of that oral opinion is not attached to the parties' papers.

2

mortgage (Mortgage) on the property. In a deposition taken on August 5, 2014, plaintiff admitted that he signed the Note, Mortgage, HUD Statement, Truth–in–Lending Disclosure Statement and Mortgage Broker Fee Disclosure. The Note was endorsed from Wells Fargo to "blank." The Mortgage was recorded in the Hudson County Clerk's office on April 18, 2007.

The Note was securitized into the Wells Fargo Mortgage Backed Securities 2007–007 Trust (Trust) with a closing date of May 30, 2007, with HSBC Bank as the trustee for the Trust. The mechanics of the Trust are governed by the Pooling and Servicing Agreement (PSA) entered into between Wells Fargo as Master Servicer, HSBC Bank as Trustee, and Wells Fargo Asset Securities Corporation as Depositor.

Plaintiff failed to make monthly Mortgage payments as and when due and the Loan became delinquent and entered into default on October 1, 2008. Currently, the loan is due for this missed payment and all subsequent payments as the default has not been cured.

On February 24, 2009, an assignment of the Mortgage from Wells Fargo to U.S. Bank, as Trustee for the Trust, was recorded in the Hudson County clerk's office. On June 25, 2013, Wells Fargo purportedly assigned the same Mortgage to HSBC Bank, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass–Through Certificates, Series 2007-7. This was recorded in the clerk's office on July 1, 2013. It appears that the Mortgage was assigned to two different trustees, but for the same trust.

Foreclosure proceedings were initiated by U.S. Bank. However, on September 23, 2013, they were dismissed without prejudice for lack of prosecution. There is no foreclosure action presently pending against plaintiff.

Plaintiff filed a complaint on October 22, 2013, in the Chancery Division against defendants to quiet title, slander of title, fraudulent conveyance, quia timet, violation of the Uniform Commercial Code (UCC), and unjust enrichment. Defendants' motion to dismiss was denied on January 17, 2014.

On February 27, 2014, plaintiff filed a first amended complaint. He asserted three counts: (1) the Mortgage was wrongfully assigned and defendants have no standing, thus the Mortgage is void (count one); (2) the Mortgage is null and void as it violates HUD and RESPA regulations (count two); and (3) defendants violated the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to–184 (count three). Plaintiff sought an order to satisfy and

cancel the Mortgage, mark the Note paid, refund the settlement costs, and treble damages.

On April 28, 2014, an order was entered dismissing count two. Further, plaintiff was granted leave to amend the amended complaint to plead a quiet title claim.

Defendants filed a motion for summary judgment and Judge Hector R. Velazquez heard argument on the motion January 9, 2015. At the outset, the court confirmed the only remaining claims were counts one and three. Plaintiff conceded that count three, the alleged violation of the CFA, had no viability and should be dismissed.[2] The court then addressed count one and found plaintiff's argument and the remedy sought to be unavailable, relying on our opinion in *Suser v. Wachovia Mortgage, FSB*, 433 N.J. Super. 317 (App. Div. 2013).

Plaintiff argued that Wells Fargo's witness testified in deposition that there was an assignment, and this admission indicated the bank no longer had the power to enforce the Mortgage. In response, the judge pointed out "that's an argument you make in a foreclosure action, not here .... you're saying to me because of the defective or invalid assignments [I] should discharge the mortgage. Well no, there's no basis for doing that."

The judge noted that *Suser* recognized the availability of a quiet title action to determine who had the right to prosecute a foreclosure action, but that it would be a "[r]are, rare case when the facts would support a court of equity ever discharging a mortgage." He explained that even if the assignments were void or voidable, the initial Mortgage was not defective and thus entering an order to discharge the Mortgage was not a plausible remedy. Further, "[t]he mortgage doesn't get discharged because you knock out the subsequent assignments. That initial mortgage is still valid."

The same day, the court entered an order granting summary judgment in favor of defendants on count one and dismissing plaintiff's amended complaint with prejudice. The court concluded that a defective assignment would not result in the Mortgage being extinguished because some entity still has a valid right to enforce the Mortgage, thus there is no basis to grant the remedy sought by plaintiff. This appeal followed.

---

[2] The order of Judge Velazquez granting the defendants' motion for summary judgment noted that the Consumer Fraud Act claim had been dismissed voluntarily. (ECF no. 21-5)

4

*Id.* at *1–*2.

The Appellate Division affirmed the judgment of the Chancery Division. The New Jersey Supreme Court denied certification. 2016 WL 6305413 (N.J. Oct. 7, 2016).

### B.   The Complaint in this Federal Action

The Complaint in the above-captioned action (the "Federal Action") was filed on June 27, 2016. (ECF no. 1) That filing date was approximately two years and five months after the Chancery Division granted summary judgment in the State Action, and approximately two and one half months after the Appellate Division affirmed the Chancery Division's judgment.

The Complaint in this Federal Action is brought against Wells Fargo Bank, N.A. ("Wells Fargo"); U.S. Bank N.A. ("U.S. Bank"); HSBC Bank USA National Association as Trustee ("HSBC"); Mortgage Electronic Registration Systems, Inc. ("MERS"); WMC Mortgage Corp. ("WMC"); and General Electric Company ("GE"). In that federal roster, the first three defendants—Wells Fargo, U.S. Bank, and HSBC—seem to duplicate the three defendants in the State Action.[3] The last three—MERS, WMC, and GE—are new.

The Complaint in the Federal Action alleges that the plaintiff "is informed and believes" that the defendants have no legal rights with respect to the mortgage in question. (Cplt. ¶¶ 1–5) Rodrigues alleges that he is the owner of property at 289 Highland Avenue, Kearny, New Jersey. (Cplt. ¶ 6) On October 28, 2005, he obtained a purchase money mortgage in the amount of $332,640 from WMC Mortgage Corp. (Cplt. ¶ 7) He "believed" that on March 28, 2007, he refinanced the loan in the amount of $438, 400. The "alleged" refinance lender was Wells Fargo. (Cplt. ¶ 8) The Complaint alleges thirteen counts, or causes of action.

---

[3]   I say "seem" because the designations of trusteeship are shortened in the federal caption.

5

Counts 1, 2, and 3 arise under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635. Count 1 alleges that Rodrigues sent a notice of rescission, as authorized by *Jesinoski v. Countrywide Home Loans, Inc.*, __ U.S. __, 135 S.Ct. 790, 792 (2015), to which Wells Fargo, U.S. Bank, and HSBC did not respond. The notice, date-stamped May 24, 2016, is attached to the Complaint. (ECF no. 1-3) Count 2 alleges that "pretend lenders" were involved. Count 3 alleges that the "actual funder of the loan" was not disclosed as required. Count 9 cites 12 C.F.R. § 226.23(1) & (3) and invokes the right of rescission, as well as cases finding that no loan transaction was "consummated."[4]

Counts 5 and 6 arise under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Count 4 alleges that there were false and misleading representations because the legal status of the debt is in doubt. Count 5 alleges that the nature of the "unauthorized agreement" creating the debt was not disclosed. Count 6 alleges that the name of the creditor to whom the debt is allegedly owed is unknown.

Count 11 cites the legal elements of a claim under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq*. Count 13 cites 15 U.S.C. § 1640 as the basis for a claim for damages. Neither Count contains additional factual allegations.

Counts 7 and 8 cite definitional sections, 15 U.S.C. §§ 1602(g)(2) ("creditor") and (h) ("credit sale"). Count 8 also recites that TILA applies to consumer credit transactions.

The two remaining claims, Counts 10 and 12, cite criminal statutes that do not provide for a private cause of action. Count 12 cites 15 U.S.C. § 1611, a

---

[4] As defendants phrase it, the plaintiff believes he is entitled to a "free house." That may be an exaggeration of plaintiff's position. It must be said, however, that there is the plaintiff's papers contain no acknowledgment that rescission, if granted, would place the parties in the position they were in before the transaction occurred. Under the regulation cited in Count 9, 21 C.F.R. § 226.23(d), for example, the borrower is required to pay back the entire amount borrowed (here, $438,400) within 20 days.

statute imposing criminal liability for certain knowing and willful violations of Title 15, ch. 41, subch. I. Count 10 cites N.J. Stat. Ann. § 2C:28-7a(2)(1) & (2), a State criminal statute relating to tampering with public records. The facts alleged under Count 10 relate primarily to MERS. MERS is alleged to be the nominee for the beneficial owner of the original 2005 mortgage and is named as the entity that released it in connection with the refinancing in 2007. (Cplt. ¶¶ 27–29) The upshot of the allegations seems to be a claim that MERS, as a nominee, has no legal status with respect to the mortgage. This count also seems to allege that there is no proof that the original 2005 mortgage was ever funded, or alternatively that MERS lacked the capacity to validly release it in connection with the refinancing.

## II.   Standard on a Motion to Dismiss

Defendants have moved, in part, to dismiss the Complaint for lack of jurisdiction, citing the *Rooker-Feldman* doctrine. Rule 12(b)(1) governs jurisdictional challenges to a complaint. These may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438.

Defendants have also moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404

7

F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly*, see *infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

In connection with the motions, the defendants proffer materials extrinsic to the complaint. These consist of papers filed in the State Action and decisions of the State courts. These are cited to establish the nature and scope of prior proceedings between the parties, and the rulings of the state courts. Such records are subject to judicial notice. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.[5]

---

[5] Even setting aside judicial notice, certain records that are the basis of the complaint, such as a mortgage, may be considered without converting a facial Rule 12(b)(1) challenge into a factual one, or a Rule 12(b)(6) motion into one for summary judgment. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in

8

Where the plaintiff, like Mr. Rodrigues here, is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

## III. Analysis

### A. *Rooker-Feldman*

The defendants move to dismiss the complaint under the *Rooker-Feldman* doctrine. Because that doctrine imposes a limitation on the subject matter jurisdiction of the Court, I consider this portion of the motion under Rule 12(b)(1). Defendants assert that the Chancery Division's award of summary judgment to defendants in the State Action deprives this Court of jurisdiction.

A federal district court does not sit to hear appeals from state court judgments. *Rooker-Feldman* thus operates to prevent a disgruntled party in state court litigation from collaterally attacking the results of that litigation in federal court, claiming constitutional or other error. *See also B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013). To put it another way, *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by

---

the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Indeed, where a complaint is based on particular documents, a defendant may submit and rely on such documents in its motion to dismiss. The reasons for the rule are (1) that the plaintiff, having relied on the document, cannot claim unfair surprise; and (2) the plaintiff cannot base a claim on a document while shielding the document itself from view. *Burlington*, 114 F.3d at 1426.

9

state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.*, 544 U.S. 280, 284 (2005).

> *Rooker-Feldman* has four essential prerequisites:
>
> (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

As to elements 1 and 3, there can be no doubt. Summary judgment was awarded on the merits to three of the defendants here by the New Jersey Superior Court. (ECF no. 21-5) That judgment was final as to liability, and it was adverse to Mr. Rodrigues, plaintiff here as he was there. His complaint was dismissed with prejudice. And that final State court judgment, rendered on January 9, 2015, well preceded the filing of this Federal Action on June 27, 2016 (ECF no.1).

That leaves interrelated elements 2 and 4: that the federal plaintiff complains of injuries caused by the state court judgment, and invites the federal court to reject it. As to the applicability of those elements, the case law provides some guidance. Under *Rooker-Feldman*, lower federal courts cannot entertain federal claims that (1) were previously adjudicated in state court or (2) are inextricably intertwined with a prior state court decision. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *Guarino v. Larsen*, 11 F.3d 1151, 1156–57 (3d Cir. 1993); *Port Auth. Police Benev. Ass'n v. Port Auth.*, 973 F.2d 169, 178 (3d Cir. 1992). The first alternative, actual adjudication, requires little explication. As for the second, a federal claim is "inextricably intertwined" with a prior state court decision if "granting the relief requested in the federal action requires determining that the state court's decision is wrong or would void the

state court's ruling." *FOCUS v. Allegheny County Court of Common Pleas.*, 75 F.3d 834, 839-40 (3d Cir. 1996). "If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit." *FOCUS*, 75 F.3d at 840. Especially in the context of "inextricably intertwined" claims, the court must apply *Rooker-Feldman* with caution. The doctrine does not operate to preclude all claims that are related to the state court judgment; it applies only to claims that were the basis of, or injuries allegedly caused by, the state court judgment. *See Cuevas v. Wells Fargo Bank, N.A.*, 643 F. App'x 124, 126 (3d Cir. 2016) (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)). To the extent that the federal action presents "some independent claim," *i.e.*, one that does not implicate the validity of the state court judgment, the doctrine does not apply. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292, 125 S. Ct. 1517 (2005), quoted in *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547–48 (3d Cir. 2006)).

Here, the State Action challenged the validity and assignment of the mortgage, claimed that it violated federal HUD regulations and RESPA, and sought rescission. To some degree, then, it appears that Mr. Rodrigues may be asserting some of the same matters in this Federal Action. To the extent he is, this Court would lack jurisdiction.

It does not appear to me, however, that this Court lacks all jurisdiction. This Court could find in Mr. Rodrigues's favor on at least some of his federal court claims without disturbing the basis of the State Action. Satisfied that I possess subject matter jurisdiction, then, I proceed to consider the defendants' non-jurisdictional challenges to the complaint, such as *res judicata* or the statute of limitations.

### B. Res judicata/Entire Controversy Doctrine

Claims that survive scrutiny under *Rooker-Feldman* may nevertheless be

barred by parallel doctrines of *res judicata*.6 Defendants, citing the prior judgment in the State Action, assert that the claims in this Federal Action are barred by *res judicata*. I agree. New Jersey *res judicata* doctrines, and particularly the entire controversy rule, provide sufficient grounds for dismissal of the complaint.

*Res judicata*, an affirmative defense, may raise issues of fact, but in a proper case may be cognizable on a motion to dismiss:

> We held in *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978), that if a statute of limitations "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." This holding applies not only to a statute of limitations defense, but also to any affirmative defense raised pursuant to Rule 8(c), including res judicata and the Entire Controversy Doctrine.

*Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). Thus *res judicata* may be considered on a Rule 12(b)(6) motion, where, as here, the necessary facts are "apparent on the face of the face of the complaint" and other documents properly considered on a motion to dismiss.

### 1. *Res judicata* and the New Jersey entire controversy rule

The preclusive effect of a state court judgment in a subsequent federal action depends on the law of the state that adjudicated the original action. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."). *See also Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 415 (1980). Under New Jersey law, claim preclusion in the traditional sense tends to be subsumed by the broader "entire controversy" rule. The entire controversy rule precludes, not just claims actually decided by a prior judgment, but all *claims and parties* that a party could and should have joined

---

6  *See Exxon Mobil*, 544 U.S. at 292 (where subject matter jurisdiction is confirmed, court may then consider "whether the defendant prevails under principles of preclusion"); *Ayres-Fountain v. E. Sav. Bank*, 153 F. App'x 91, 93 (3d Cir. 2005) ("even if review of the complaint were not barred by *Rooker-Feldman*, we agree with the District Court that [the plaintiff's] claims were barred by res judicata").

12

in a prior case based on the same transaction or occurrence.[7]

As to claims, the entire controversy doctrine "requires a party to bring in one action 'all affirmative claims that [it] might have against another party, including counterclaims and cross-claims,' . . . or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 289, 662 A.2d 509, 513 (1995)).[8] *See also* Sylvia B. Pressler & Peter G. Verniero, N.J. Ct. R. 4:30A, Comment 1 (2017 ed., annot.)

> We have described the entire controversy doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). A mainstay of New Jersey civil procedure, the doctrine encapsulates the state's longstanding policy judgment that "the adjudication of a legal controversy should occur in one litigation in only one court[.]" *Cogdell v. Hosp. Ctr. at Orange*, 560 A.2d 1169, 1172 (N.J. 1989); *see also* N.J. Const. art. VI, § 3, ¶ 4 ("[L]egal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."); *Smith v. Red Top Taxicab Corp.*, 168 A. 796, 797 (N.J. 1933) ("No principle of law is more firmly established than that a single or entire cause of action cannot be subdivided into several claims, and separate actions maintained thereon.")....

---

[7] The doctrine rests on considerations of both fairness and efficiency:

> Under the entire controversy doctrine, a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action. The doctrine has three purposes: (1) complete and final disposition of cases through avoidance of piecemeal decisions; (2) fairness to parties to an action and to others with a material interest in it; and (3) efficiency and avoidance of waste and delay. *See DiTrolio v. Antiles*, 142 N.J. 253, 662 A.2d 494, 502 (N.J.1995). As an equitable doctrine, its application is flexible, with a case-by-case appreciation for fairness to the parties.

*Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999).

[8] *Circle Chevrolet* was later overruled to the extent that attorney malpractice claims, because they are not required to be brought in the action in which the malpractice occurred, were exempted from the entire controversy doctrine. *Olds v. Donnelly*, 150 N.J. 424, 696 A.2d 633 (1997)

*Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2014).

There is no requirement that the claim as to which preclusion is sought have been actually asserted in the prior action. Rather, the necessary relation between the prior action and the present one is a transactional one:

> In determining whether a subsequent claim should be barred under this doctrine, "the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." [citing *DiTrolio v. Antiles*, 142 N.J. 253, 268, 662 A.2d 494 (1995)]. " 'It is the core set of facts that provides the link between distinct claims against the same parties ... and triggers the requirement that they be determined in one proceeding.' " *Id.* at 267–68, 662 A.2d 494. There is no requirement that there be a "commonality of legal issues." *Id.* at 271, 662 A.2d 494.

*Wadeer v. New Jersey Mfrs. Ins. Co.*, 220 N.J. 591, 605, 110 A.3d 19, 27 (2015). So the entire controversy doctrine applies in federal court "when there was a previous state-court action involving the same transaction." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991). It extinguishes any subsequent federal-court claim that could and should have been joined in the prior state action.

The entire controversy doctrine encompasses not just claims but parties. Although the party-joinder component of the doctrine evolved more slowly, it has long been clear that the rule encompasses mandatory joinder of parties. *See Olds v. Donnelly*, 150 N.J. 424, 433–34, 696 A.2d 633, 638 (1997) (citing *Cogdell v. Hospital Ctr.*, 116 N.J. 7, 16, 560 A.2d 1169 (1989)). "Requiring the joinder of all parties with a material interest in a litigation thus guarantees a complete determination of liability, avoids prejudice to absent parties, and prevents a duplication of lawsuits." *Olds*, 150 N.J. at 434, 696 A.2d at 638. Thus the party-joinder component of the entire controversy doctrine requires a plaintiff to join in the prior action "'all parties with a material interest in the controversy,' or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods*, 109 F.3d at 885 (quoting *Circle Chevrolet*, 142 N.J. at 289, 662 A.2d at 513 (1995)).

Since the adoption of Rule 4:30A in 1990, the preclusive effect of the entire controversy rule as to both claims and parties has been explicit: "Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine...." N.J. Ct. R. 4:30A (current ver.).

### 2. Application to this case

The entire controversy rule surely applies here. The State Action brought by Mr. Rodrigues was "a previous state-court action involving the same transaction," *i.e.*, the mortgages, their validity, and the defendants' entitlement to enforce them. *See Bennun*, 941 F.2d at 163 (3d Cir. 1991).

The claims in this Federal Action, for the most part, were not explicitly pled in the State Action. They appear to arise under different statutes. I therefore consider whether these are claims that are nevertheless precluded because they are part of the same transaction sued upon in in the State Action. Clearly they are.

The State Action arose from the original mortgage loan in 2005, the refinancing in 2007, and the chain of assignments. *See* Section I.A, *supra*. There, Mr. Rodrigues alleged various forms of chicanery with regard to the chain of title, alleged that the mortgage was invalid under, *inter alia*, HUD regulations and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617, and sought rescission of the mortgage. The claims in this Federal Action are closely related and parallel to those claims in the State Action. They seek the same relief, and cite many of the same considerations, although the statutory bases are distinct.

For the reasons stated in Section III.B.1, immediately preceding, the entire controversy doctrine contains no requirement that the causes of action be legally identical. Indeed, quite the opposite. Because the factual circumstances and transactions giving rise to both actions are the same, the necessary connection is present. The current claims are precluded under the claims component of the entire controversy doctrine.

Three of the defendants in this Federal Action seem to be identical to the defendants in the State Action. Also named in this Federal Action are three additional defendants: MERS, WMC, and GE. Their alleged involvement, however, is tightly bound to the parties and transactions that are at issue in both the State and Federal actions. WMC was the original mortgagee on the 2005 mortgage. The Complaint alleges that WMC is now defunct, and that its parent corporation is GE. (Cplt. ¶ 5) MERS is alleged to be the nominee for the beneficial owner of the original 2005 mortgage and is named as the entity that released that mortgage in connection with the refinancing in 2007. (Cplt. ¶¶ 27–29) These parties are part and parcel of the mortgages and the mortgage transactions that Mr. Rodrigues challenged and attempted to invalidate in the State Action.

For all these reasons, then, the claims in this Federal Action, as against all six defendants, are barred by the entire controversy doctrine. The motion to dismiss on Rule 12(b)(6) grounds is therefore granted

### C. Statute of Limitations

The grounds discussed above are sufficient to dispose of the case. I nevertheless comment briefly on one other threshold bar to relief: the statute of limitations.

The TILA claims here are essentially claims for rescission. A request for rescission under TILA must be brought within three years. [9] That is a firm deadline, *i.e.*, a statute of repose that is not subject to tolling. *See* 15 U.S.C. § 1635(f); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 118 S. Ct. 1408, 1412 (1998); *Community Bank*, 622 F.3d at 301 n.18; *Williams v. Wells Fargo Home Mortg., Inc.*, 410 F. App'x 495, 499 (3d Cir. 2011). ). By the "uncompromising provision of § 1635(f) … the borrower's right 'shall expire' with the running of

---

[9] A claim for monetary damages under TILA has a one-year statute of limitations, which runs from the date of closing of the loan. *See* 15 U.S.C. § 1640e; *In re Community Bank of Northern Virginia*, 622 F.3d 275, 303 (3d Cir. 2010).

the time." *Beach*, 523 U.S. at 418, 118 S. Ct. at 1412–13 (citing 15 U.S.C. § 1635(f)). Thus "the Act permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run." *Id.* at 419, 118 S. Ct. at 1413. *Jesinoski v. Countrywide Home Loans, Inc.*, __ U.S. __, 135 S.Ct. 790, 792 (2015), cited by the plaintiff, has no application. *Jesinoski* merely holds that a notice of rescission, brought within the three year limitations period, is sufficient; filing an action is not required. Here, however, the plaintiff's notice of rescission (attached to his Complaint as an Exhibit, ECF no. 1-3) is date-stamped May 24, 2016. The TILA claims, by definition, relate to the closing of the original loan in 2005 or the refinancing on March 28, 2007. The notice of rescission was sent, and this action was filed, in 2016. The TILA claims are therefore barred by the statute of limitations.

The statute of limitations under the FDCPA is one year. 15 U.S.C. § 1692k(d) (claim may be brought "A claim under the FDCPA "may be brought ... within one year from the date on which the violation occurs.""). The claim in the Complaint under 15 U.S.C. § 1640 is ill-defined, but the statute of limitations for such a claim would be 3 years at most. *See* 15 U.S.C. § 1640(e) (defining different limitations period depending on the nature of the claim). The Complaint asserts a claim under the New Jersey Consumer Fraud Act, and also contains scattered allegations of fraud. The statute of limitations for a fraud claim is six years. N.J. Stat. Ann. § 2A:14-1. That limitations period runs from when the fraudulent act or omission occurred, or could have been discovered through the exercise of reasonable diligence. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 425 (3d Cir. 1999) (New Jersey law).

Any cause of action under the FDCPA or for fraud in connection with the original mortgage or financing accrued at or about the time of closing in 2005 or 2007. This action was not filed until some nine years later, in 2016. Nor does the plaintiff articulate any basis for delayed accrual, or for tolling the statute of limitations (to the extent any of them are subject to tolling). The

claims express doubt as to whether the loans were funded; if they had not been, that surely would have become immediately apparent. They also object to the identity of the parties involved; again, the holder of the mortgage and the party to whom the plaintiff was directed to send payments would have been apparent at the time. Vague and conclusory allegations of concealment of the "true" mortgagee, or that the funding of the loan has not been "proven," do not pass the plausibility standard of *Twombly*.

The remaining counts, which cite definitional sections or criminal statutes that do not contain a private cause of action, do not even meet the threshold of requiring a statute of limitations analysis.

If the Court were to reach the statute of limitations issue, then, dismissal on those grounds would be appropriate.

### D. Other grounds

The defendants have asserted a number of alternative grounds for granting a Rule 12(b)(6) dismissal. I do not reach them.

### CONCLUSION

Defendants' motions (ECF nos. 5, 21, 24) under Federal Rule of Civil Procedure 12(b)(1) to dismiss the complaint for lack of jurisdiction, and under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief may be granted, are granted. A separate Order accompanies this Opinion.

Dated: December 23, 2016

/s/ Kevin McNulty
KEVIN MCNULTY
United States District Judge